UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Raymond Vincent Loree,

    Plaintiff,

    v.                                       Civil Action No. 2:15-cv-251-jmc

Carolyn W. Colvin, Acting Commissioner
of Social Security Administration,

    Defendant.

**<u>OPINION AND ORDER</u>**
(Docs. 15, 17)

Plaintiff Raymond Loree brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits (DIB). Pending before the Court are Loree's motion to reverse the Commissioner's decision (Doc. 15), and the Commissioner's motion to affirm the same (Doc. 17). For the reasons stated below, Loree's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for further proceedings and a new decision.

**<u>Background</u>**

Loree was 27 years old on his alleged disability onset date of August 1, 2013. He completed high school, and has work experience as a cashier/checker, a fast-food worker, a laborer, and a salesperson. Starting in October 2007, Loree was employed as a combat engineer in the military. (AR 69–70.) He was stationed in Iraq from June 2008 through

June 2009 and in Afghanistan from March 2011 through April 2012.  (AR 3302, 3305, 3307.)

Loree suffers from many impairments, several of them caused by explosions of improvised explosive devices (IEDs) during his deployment in Iraq.  His most debilitating physical impairments are back pain, shoulder and elbow pain, knee pain, traumatic brain injury (TBI), hearing loss, sleep problems, and headaches.  He uses hearing aids, wears a knee brace, and takes over a dozen medications.  (AR 3323.)  He testified that these medications cause many side effects, including loss of appetite, headaches, constipation, diarrhea, and problems concentrating and focusing.  (AR 65–66).  Loree's most debilitating mental impairments are posttraumatic stress disorder (PTSD), depression, anxiety, and anger.  His PTSD symptoms include flashbacks and nightmares, largely resulting from his 2008–2009 deployment in Iraq where he witnessed, among other things, the death of his close friend in combat in October 2008 (AR 3302–03, 3313), and where he was "blown up by a rocket" while on duty on the border of Iran in April 2009 (AR 3302, *see* AR 3321–22).[1]

Loree has difficulty dealing with people and does not like to go out in public.  He uses a service dog to help with his anxiety and other PTSD symptoms.  He has been diagnosed with alcoholism, but he testified at the first administrative hearing that he

---

[1] Loree testified at the first administrative hearing that his job in Iraq was "to look for IEDs[,] . . . to clear the roads for convoys to deliver food and mail and stuff like that to the other bases for soldiers, [and to] make sure they had safe travel."  (AR 3302–03; *see also* AR 70 ("my job was to look for IEDs and blow them up or get blown up").)  Loree testified at the second administrative hearing that his job in Afghanistan was "to go into villages by helicopter or by vehicle or by foot during off hours through the night and kick in doors and other things."  (AR 70.)

stopped drinking in December 2013. (AR 3311.) In July 2014, the Department of Veterans Affairs (VA) assigned Loree a total combined rating for service-connected disabilities of 90%, based on his impairments of PTSD, headaches, lumbar spondylosis, right acromioclavicular strain, right lateral epicondylitis, right knee patellofemoral syndrome, tinnitus, gastroesophageal reflux disease, TBI, and right L-5 radiculopathy. (AR 3195; *see* 3172–3206.)

Loree lives in an apartment with his girlfriend, their twin toddlers, and his service dog. (AR 246, 3312.) At the time of the first administrative hearing (September 2014), his twins had just been born: one was at home and the other was in the hospital neonatal intensive care unit where Loree visited every three hours to feed him. By the time of the second hearing (December 2014), both babies were at home and Loree was caring for them on Monday, Wednesday, and Friday nights. (AR 59.) Loree also shares joint custody of three additional children–who were ages one, seven, and ten, respectively, in September 2014–with his ex-wife. (AR 3312.) He sees these children every other weekend and summers. (*Id*; *see also* AR 3313.) When Loree has the three older children for a weekend, his daughter, his girlfriend, and his mother help him care for the younger children, cook, and clean. (AR 3313.)

In April 2014, Loree filed an application for DIB, alleging that, starting on August 1, 2013, he has been unable to work due to lower back pain, erectile dysfunction, loss of hearing, PTSD, and TBI. (AR 219, 233.) Loree's application was denied initially and upon reconsideration, and he timely requested an administrative hearing. On September 24, 2014, Administrative Law Judge (ALJ) Jennifer Gale Smith conducted a

hearing on Loree's application. (AR 3293–32.) Loree appeared and testified, and was represented by counsel. Among other things, Loree testified that he is unable to work because he cannot stand or sit for prolonged periods due to back, knee, and foot pain; he has trouble concentrating and talking to people; and his medications make him sleepy. (AR 3328–29.) On December 2, 2014, the ALJ held a supplemental hearing to obtain testimony from a vocational expert (VE). (AR 54–77.) On January 15, 2015, the ALJ issued a decision finding that Loree was not disabled under the Social Security Act from his alleged disability onset date through the date of the decision. (AR 24–47.) Soon thereafter, the Appeals Council denied Loree's request for review, rendering the ALJ's decision the final decision of the Commissioner. (AR 1–3.) Having exhausted his administrative remedies, Loree filed the Complaint in this action on November 30, 2015. (Doc. 3.)

## **ALJ Decision**

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is

4

presumptively disabled if his or her impairment meets or equals a listed impairment. *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity (RFC), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and other evidence in the record.  20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1).  The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work."  20 C.F.R. §§ 404.1520(g), 416.920(g).  The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Smith first determined that Loree had not engaged in substantial gainful activity since his alleged disability onset date of August 1, 2013.  (AR 27.)  At step two, the ALJ found that Loree had the following severe impairments: diffuse disc bulges at L1-2 through L3-4 with minimal thecal sac compression, diffuse disc bulge and small central disc protrusion at L5-S1 with radiculopathy, lumbar spondylosis, post-concussion syndrome, headaches, alcohol dependence, PTSD, mild TBI, adjustment disorder with anxiety and depression, hearing

5

loss with tinnitus, right acromioclavicular strain, right shoulder pain, right epicondylitis, and right knee patellofemoral syndrome. (*Id.*) Conversely, the ALJ found that Loree's erectile dysfunction, gastroesophageal reflux disease, and attention deficit hyperactivity disorder were either nonsevere or not medically determinable impairments. (AR 28.) At step three, the ALJ determined that none of Loree's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 28–34.)

Next, the ALJ determined that Loree had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), except as follows:

> [Loree] should not climb ladders, ropes, [or] scaffolds, kneel, crouch, and crawl; [he] can occasionally climb ramps and stairs, balance, and stoop; [he] can frequently reach; [he] is limited to simple, routine, repetitive tasks; [he] should work in a low-stress job, defined as occasional decision-making, occasional judgment required, and occasional changes in the work setting; [he] should have occasional contact with co[]workers, supervisors, and the public; [he] should work at goal-oriented work and not production-pace rate work; [he] should be able to change positions every [30] minutes, but [he] could stay on[]task [at] the workstation during the position change; [he] should not work in a noise environment greater than moderate [as] defined by the DOT, but [he] retains the ability to hear [and] understand simple oral instructions, and communicate simple information.

(AR 34–35.) Given this RFC, the ALJ found that Loree was unable to perform his past relevant work as a cashier checker, fast-food worker, store laborer, salesperson, and combat engineer. (AR 44.) Nonetheless, the ALJ determined that there were other jobs existing in significant numbers in the national economy that Loree could perform, including order caller, photocopier-machine operator, and stock checker (apparel). (AR 45–46.) The ALJ concluded that Loree had not been under a disability from the alleged onset date of August 1, 2013 through the date of the decision. (AR 46–47.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

7

*Poupore*, 566 F.3d at 305.  In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Loree makes the following arguments: (1) the ALJ erred in failing to discuss Loree's need for a service dog as a work-related accommodation; (2) the ALJ erred in her analysis of Loree's headaches by failing to evaluate them at step three and failing to account for them in her RFC determination; (3) the ALJ did not properly account for Loree's VA disability determination; and (4) the ALJ failed to conduct an appropriate assessment of Loree's credibility.  (Doc. 16.)  In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence and complies with the applicable legal standards.  (Doc. 17.)  For the reasons explained below, the Court remands Loree's claim for further proceedings and a new decision, given the ALJ's failure to give any weight to the VA disability determination which directly relates to the impairments and time period under review.

### I.     VA Disability Determination

As noted above, in July 2014, the VA assigned Loree a combined rating for service-connected disabilities of 90%.  (AR 3195; *see* AR 3172–3206.)  This rating was based primarily on Loree's PTSD, headaches, and lumbar spondylosis.  (*Id.*)  Although the ALJ considered the VA's disability determination in her decision, she gave "no weight" to it, citing the general propositions that: (1) a determination made by another agency is not binding on the Social Security Administration (SSA); and (2) the

determination of whether a claimant is disabled under the Social Security Act is reserved to the Commissioner.  (AR 44.)  Loree argues that this analysis is inadequate under the law of the Second Circuit and this Court in particular.  (*See* Doc. 16 at 14–15 (citing *Machia v. Astrue*, 670 F. Supp. 2d 326 (D. Vt. 2009).)  The Commissioner responds by pointing out that the ALJ did not ignore the VA disability determination, but rather, considered it and gave good reasons for rejecting it.  Furthermore, the Commissioner asserts that even if the ALJ erred in not affording some weight to the VA determination, the error was harmless given that the determination was "generally consistent" with the ALJ's RFC determination.  (Doc. 17 at 22.)

      The SSA is not bound by a disability determination made by another governmental agency such as the VA, because other agency disability determinations are based on rules that differ from the ones used by the SSA in disability cases.  20 C.F.R. § 404.1504; *see* SSR 06–03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006).  Nonetheless, the Second Circuit has long held that determinations of other governmental agencies are entitled to "some weight."  *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975) ("While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered."); *see Evans v. Colvin*, No. 15-2569-CV, 2016 WL 2909358 (2d Cir. May 19, 2016); *Rivera v. Colvin*, 592 F. App'x 32, 33 (2d Cir. 2015); *Hankerson v. Harris*, 636 F.2d 893, 896–97 (2d Cir. 1980); *Parker v. Harris*, 626 F.2d 225, 233 (2d Cir. 1980).  In *Machia*, this Court explained: "The point of the Second Circuit's admonition to accord VA determinations 'some weight' is that in addition to the oral

testimony and medical evidence, VA rating decisions are another item to be placed on the evidentiary scale." 670 F. Supp. 2d at 336.  Applied here, the ALJ correctly recognized that the VA's July 2014 disability determination pertaining to Loree is not binding on the Commissioner.  (AR 44.)  The ALJ erred, however, in affording "no weight" to that determination. (*Id.*)  *See, e.g.*, *Machia*, 670 F. Supp. 2d at 334–36; *Kowalske v. Astrue*, No. 10-CV-339S, 2012 WL 32967, at *4 (W.D.N.Y. Jan. 6, 2012) ("Although the ALJ is correct that the VA's determination of disability is not a vocational determination, it nevertheless speaks to Plaintiff's [RFC] and the ALJ was required to give it some weight and explain why it was not entitled to greater consideration.").

      The ALJ's error was not harmless because the VA determination relates to the same impairments at issue in Loree's DIB claim (PTSD being the most significantly debilitating) and their effect on Loree around the same time as the alleged disability period.  *See Evans*, 2016 WL 2909358, at *1 (remanding for consideration of VA determination that was reached "based on evidence pertaining both to the period relevant [to the claim] and thereafter"); *Barrett v. Astrue*, No. 10-CV-618S, 2012 WL 895961, at *5–6 (W.D.N.Y. Mar. 15, 2012) ("the VA's 1997 decision was sufficiently close in time to the alleged onset of disability that the ALJ should have considered the VA's determination and stated what weight it was being given"); *Stokes v. Astrue*, No. 7:10-CV-1129 MAD, 2012 WL 695856, at *14 (N.D.N.Y. Mar. 1, 2012) ("the VA's determination is material to the Commissioner if the VA granted a claimant disability benefits based on a claim identical to the one presented to the ALJ"); *compare Fitzgerald v. Astrue*, Civil Action No. 2:08-CV-170, 2009 WL 4571762, at *10 (D. Vt. Nov. 30, 2009) (not

10

remanding where ALJ failed to consider VA determination because it "is so far removed in time from the dates critical to Fitzgerald's claim for social security disability benefits, that such determination is irrelevant to the social security decision"). Moreover, the VA determination appears to have been based on much of the same medical evidence, principally from veterans-affiliated medical providers, that Loree's social security claim is founded. (*See* Doc. 16 at 15–21; *see also* AR 772, 1273, 1422, 2800.) *See Stokes*, 2012 WL 695856, at *15 ("[s]ince all of plaintiff's treatment was at the V.A. Medical Center, the ALJ was obligated to, at the very least, consider the [VA's] determination as it was based upon the same medical record").

Furthermore, it cannot be said that "application of the correct legal principles to the record could lead to only one conclusion." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Fitzgerald*, 2009 WL 4571762, at *8–11 (applying harmless error doctrine in this context). The Commissioner argues that "it is abundantly clear that the ALJ carefully reviewed and discussed the records that formed the basis of the VA rating, and reasoned that a finding of almost complete disability was not supported by those records, under SSA standards." (Doc. 17 at 21.) But, as this Court has previously stated, "the Commissioner cannot avoid remand by pointing out that the ALJ considered the evidence upon which the VA determination was based." *Machia*, 670 F. Supp. 2d at 336 (internal quotation marks omitted). The VA determination, in and of itself, is entitled to "at least some evidentiary weight," in addition to the other record evidence. *Id.* In *Machia*, the Court explained:

11

> While it is obviously important that the SSA consider material evidence upon which a VA determination is based, *see, e.g.*, *Gyurko v. Harris*, 487 F. Supp. 1121, 1129 (D. Conn. 1980), a rule requiring nothing more would permit adjudicators to completely ignore VA determinations—a proposition explicitly rejected by this and every other circuit to consider the issue.

670 F. Supp. 2d at 336 (citing *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002) ("No circuit has held that an ALJ is free to disregard a VA disability rating.")); *see Lawler v. Astrue*, No. 10-CV-3397 ARR, 2011 WL 5825781, at *9 (E.D.N.Y. Nov. 14, 2011) (holding that "the VA's disability determination [must] be accorded some actual weight, independent of and in addition to, the evidence in the record itself," and that, "[a]n ALJ . . . fails to give any weight to the VA's determination by merely reexamining the evidence and coming to a different conclusion").

The Court thus finds that the ALJ erred in affording no weight to the VA disability determination, and that the error requires remand.

## II.  Severe Headaches

The Court also finds that the ALJ erred in her analysis of Loree's severe headaches. Loree asserts that the ALJ should have evaluated his headaches at step three of the sequential evaluation (Listing 11.03) and should have accounted for those headaches in her RFC determination. (Doc. 16 at 6–13.) The Commissioner responds that the record reveals, and the ALJ discussed, that Loree's headaches did not involve loss of consciousness or any of the symptoms associated with alteration of awareness, including nausea, dizziness, double/blurred vision, or difficulty speaking. (Doc. 17 at 19.) Therefore, Loree could not have met the criteria of Listing 11.03. The Commissioner further asserts that remand is not warranted due to the ALJ's failure to mention Listing

12

11.03, as "the ALJ thoroughly explained why she did not find Mr. Loree's headaches so debilitating as to cause significant interference with his activity during the day," and even if that were not the case, the court "is able to look to other portions of the ALJ's decision to determine [her] rationale." (*Id.* at 20) (citing *Salmini v. Comm'r. of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. 2010) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983))).

The Court agrees with the Commissioner that remand is not warranted due to the ALJ's failure to mention Listing 11.03, and the record does not support a finding that Loree met or medically equaled that listing. The Listings are regulatory descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990) (citing 20 C.F.R. pt. 404, subpt. P, app. 1 (pt. A) (1989)). Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. *Id.* at 530. For a claimant to show that his or her impairment matches a listing, the impairment must meet "all of the specified medical criteria" of that listing. *Id.* "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* Likewise, for a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, he must present medical findings equal in severity to "all the criteria for the one most similar listed impairment." *Id.* at 531. The SSA has explained that a determination that a claimant's impairment or combination of impairments is medically the equivalent of a listed impairment "must be based on medical evidence demonstrated by medically acceptable clinical and laboratory diagnostic

techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary." SSR 86-8, 1986 WL 68636, at *4 (1986), *superseded on other grounds by* SSR 91-7c, 1991 WL 231791 (1991).

Loree claims, and the Commissioner does not dispute, that: "although there is no listing which explicitly addresses migraine headaches, the most appropriate Listing for consideration in [headache] cases is Listing 11.03." (Doc. 16 at 9 (citing *SSA National Q&A 09–036*)[2].) "Listing 11.03, for non-convulsive epilepsy, establishes a per se disability for 'petit mal, psychomotor or focal [seizures] . . . documented by detailed description of a typical seizure pattern . . . occurring more frequently than once weekly in spite of at least [three] . . . months of prescribed treatment.'" *Russell v. Colvin*, No. 5:13-CV-1030 MAD/CFH, 2015 WL 570828, at *10 (N.D.N.Y. Feb. 11, 2015) (quoting 20 C.F.R. pt 404, subpt P, App. 1 § 11.03) (last alteration added). Loree has failed to demonstrate that he meets all of the specified medical criteria for this Listing. He has also failed to demonstrate—by medically acceptable clinical and laboratory diagnostic techniques—that his headaches are medically the equivalent of the Listing.

However, the ALJ should reassess Loree's headaches on remand and more effectively account for them in her RFC determination. The Commissioner argues that the ALJ's limitation in her RFC determination that Loree could do only "goal-oriented rather than production-pace work," adequately accounted for the effects of Loree's headaches.

---

[2] Loree apparently intended to attach a document titled "*SSA National Q&A 09–036*" as Exhibit A to his Memorandum filed with the Court (*see* Doc. 16 at 9–10), but that document is not in the Court file. The Court has issued this Opinion and Order in its absence, finding it unnecessary to the decision.

14

(Doc. 17 at 18 (citing AR 37–38).)  But Loree alleges and the record demonstrates that his headaches also limit him by frequently requiring him to remove himself from situations for unpredictable amounts of time and at unpredictable periods.  (*See, e.g.*, AR 341–43, 345–50, 579, 1760, 1765, 1876, 2953, 3120, 3180, 3213.)  The ALJ did not account for this limitation in her RFC determination, and should do so on remand, especially considering the VE's testimony that a person who is absent from work for one or more days each month or off task for five percent of the time or more would not be employable.  (AR 75.)

### III.     Remaining Issues

Given that Loree's claim is being remanded for reconsideration of the VA disability determination, the Court need not address Loree's remaining arguments.  In an effort to provide guidance on remand, however, the Court notes that the ALJ should reassess Loree's credibility, particularly considering his good work history.  *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (internal quotation marks omitted) ("ALJs are specifically instructed that credibility determinations should take account of prior work record.").

The ALJ should also make an effort to obtain medical opinions from Loree's treating physicians or other treating providers.  *See Machia*, 670 F. Supp. 2d at 338 (ordering ALJ to obtain medical source statements from claimant's treating physicians); *Williams v. Astrue*, No. 5:10-CV-212, 2011 WL 4380797, at *9 (D. Vt. Sept. 19, 2011) (same).  At the first administrative hearing, the ALJ noted that there were no medical opinions from any treating providers in the file, and Loree's attorney stated that he did not

know why that was the case. (AR 3296; *see* AR 3297–98 (ALJ stating: "There is a lot of medical treatment, but there are no medical opinions . . . from the doctors who have treated you. . . . And . . . that's something I think you want me to have.").) At the end of the hearing, the ALJ stated: "[P]lease get me some opinion evidence[;] . . . I want to hear what your doctors have to say about your limitations [at the next administrative hearing]." (AR 3331.) But at the second administrative hearing, Loree testified that, although he had asked at least one of his treating providers to complete a medical source statement on his behalf, he "found out that the providers [at] military installations don't fill out that type of thing[;] . . . [and] they said no." (AR 66.)

It is unclear what effort the ALJ took to obtain these critical medical opinions, but it appears the ALJ did not satisfy her duty to develop the record. *See* 20 C.F.R. § 404.1512(d)(1) ("we will make an initial request for evidence from your medical source and, . . . if the evidence has not been received, we will make one follow[-]up request to obtain the medical evidence necessary to make a determination"); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) ("where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel'"); *see also Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."). On remand, the ALJ should take the required steps to obtain medical opinions from Loree's treating providers.

**<u>Conclusion</u>**

For these reasons, the Court GRANTS Loree's motion (Doc. 15), DENIES the Commissioner's motion (Doc. 17), and REMANDS for further proceedings and a new decision in accordance with this ruling.  As discussed above, the ALJ erred in giving no weight to the VA disability determination, particularly with respect to Loree's PTSD.  Moreover, the ALJ failed to adequately account for Loree's headaches in her RFC determination and failed to develop the record with respect to medical opinions from Loree's treating providers.

Dated at Burlington, in the District of Vermont, this 20th day of September, 2016.

<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge
